# George Johnston, Plff. in Err., v. Jacobina F. Thumm et al.

An agent to sell property cannot use his position to extort from his principal money to which he is not entitled, but must pay over the proceeds in his hands, less proper charges.

(Argued November 1, 1886. Decided January 3, 1887.)

October Term, 1886, No. 119, W. D., before GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Error to the Common Pleas No. 1 of Allegheny County to review a judgment on a verdict for plaintiffs in an action of assumpsit. Affirmed.

The facts as they appeared at the trial in the court below, before STOWE, P. J., were as follows:

The plaintiffs were Jacobina Thumm, the widow, and Matilda F. Thumm *et al.,* the heirs of Gustave A. Thumm, deceased, the latter suing by the said Jacobina Thumm, their mother and next friend. The defendant, George Johnston, was a real estate agent employed by them to sell certain real estate of which Gustave A. Thumm died intestate. It was encumbered with a mortgage of about $7,000 and accrued interest, and was also subject to a lien for unpaid city taxes. The mortgage standing in the way of an advantageous sale, under advice of counsel, the plaintiffs permitted a sheriff's sale of the property thereunder.

Defendant became the purchaser at the sale for the full amount of the mortgage, interest, and unpaid taxes under agreement with plaintiffs, by which upon receiving the sheriff's deed to himself he should proceed to make a sale or sales of the property, paying out of the moneys received on such sales the amount of his bid, costs, and other expenses and paying over the balance to the plaintiffs.

The premises were divided into three lots by Johnston and sold to three purchasers, namely: Klauss, Held, and Jope. The money received from Klauss and Held amounted to $4,915. The middle lot, on which was erected a dwelling house which was occupied by the plaintiffs, was sold to Jope for $5,720; and a general warranty deed was made and delivered by Johnston, he having received the entire consideration from Jope excepting the sum of $1,200. When Johnston came to close the sale to Jope, the parties met at the office of one of the attorneys.

The plaintiffs refused to deliver possession to Jope until Johnston, their agent, should settle with them. The latter produced the following statement:

February 15, 1886.

Statement showing profit on purchase and sale of Thumm property in Oakland.

| | | |
|---|---|---:|
| Received of Klauss | | $2,400 00 |
| " | Held | 2,515 00 |
| " | Jope | 5,720 00 |
| | | $10,635 00 |

| | | |
|---|---:|---:|
| Pd. sheriff bid ........................ | $7,900 00 | |
| " for advertising, attorneys' fees, etc., ....................... | 200 00 | |
| " interest to Wolf................. | 60 00 | |
| " taxes and costs................ | 63 00 | |
| " sheriff and Pro. for 3 deeds.... | 9 00 | |
| " drawing deeds ............... | 15 00 | $8,247 00 |
| | | $2,388.00 |
| Allowed Mr. Jope for delay in obtaining possession ................. | $25 00 | |
| Time, trouble and responsibilty, say.. | 500 00 | |
| Money paid Mrs. T............... | 471 00 | $996 00 |
| | | $1,392 00 |
| Pd. for insurance ................ | $28 00 | |
| " for recording 3 deeds ......... | 6 75 | |
| " for ack. of 3 deeds ........... | 2 25 | 37 00 |
| | | $1,355 00 |
| Additional compensation for services and use of money............... | | $250 00 |
| | | $1,105 00 |

The plaintiffs objected to some of the items in the above statement, but finally said they would accept the sum of $1,355, one of the balances stated therein. Johnston refused to accept this offer, but agreed to pay $1,105, which the plaintiffs refused to accept. Jope immediately brought an action of ejectment and claimed to recover mesne profits.

Thereafter plaintiffs brought this action against Johnston to recover in assumpsit the whole balance due to them from the sales, including the money withheld by Jope.

The court charged the jury as follows:

Starting out with what is testified to by some witnesses and impliedly admitted, at least so far as the case is concerned, by defendant, that it is a fact that he had purchased this property and sold it with the idea of getting his money back, being reimbursed, and getting a fair compensation for his services, and

credit for the expenses incident to the transaction, the plaintiff is entitled to recover something from the defendant in this case.

The case has been somewhat embarrassed by the fact that another action was brought, which for the present we will throw out of consideration, because as I look at the case now it is immaterial. But while it is the fact that under any aspect of the evidence the plaintiff is entitled to have something paid her by the defendant, it does not necessarily follow that she has a right to recover in this action, because that depends upon some matters, to which I will direct your attention, which occurred at the time this interview took place at Mr. Dicken's office. [The fact that the plaintiff did not give up possession of the property, and the fact that the defendant did not actually receive the purchase money, make this case such that the plaintiff can only recover here, provided she has satisfied the jury that she tendered the defendant all that he was entitled to have by way of credit, or rather claimed no more from him than she was entitled to have from him on a fair settlement of the whole transaction.]

Mr. Jope, of course, was not bound to pay the money until he got possession. She standing in the way of Mr. Jope's possession, the agent, the defendant here, could not get the money. The arrangement primarily was that he was only to give her the difference that remained after getting the purchase money. He had a right to get that first deducting all of these expenses. She, in that way then, has interfered between him and the reception of the cash, and while it might be that in another action, if she had given up possession—or would now give up possession of the property—she could recover the difference from the parties, she could not recover in this action, although in that view of the case it would only throw her over to another suit. And now we come to the question, Can she sustain this action?

At the interview between these parties, Mr. Jope, the purchaser, Mr. Johnston, the defendant in this action, and Mrs. Thumm, through her counsel (she did not seem to be personally present, but she was acting there through Mr. Dicken), this whole matter was sought to be determined. Jope was there with his money in his pocket, and all he wanted was to have such an assurance as would satisfy him that he could have the property immediately or speedily, and he would pay the money over. He could not safely pay until this matter was settled between Mrs. Thumm and Mr. Johnston, because he could not get possession,

and Mrs. Thumm would not give up possession; and I am not in a position to say that she was not justified in holding on to every right or question of right that she may have had, to induce a settlement on the part of Johnston, if she got suspicious or he got suspicious. All they had to do was to determine what was coming to Mr. Johnston, who had some money coming to her.

Now the question arises, to be determined at that interview, How much ought Mrs. Thumm to have? They agreed upon the attorney's fees, or the amount allowed him for his commissions, $500. There were some disputes about other matters and it would seem—of course that is for the jury—but it would seem under the testimony to have come down about, at last, to a question of $200 or $250.

Mr. Bryant says he was representing Mr. Jope. Now when they got to about that shape there is no question, apparently, that Mrs. Thumm said: "If you will give me $1,355 now, although I dispute these other matters, which I think I ought to have, and I am allowing more than I ought to allow (that is the substance of it), I will take $1,355 and leave the property, and this matter can be fixed up. The defendant said he would not, or at least declined to do it, and there seems to have been that difference, as I have suggested, of some $200 or $250. According to that, Johnson would claim that he ought not to pay more than some $1,105, if it were $250 or $1,155 if it were $200.

[But, at all events, they did not agree; that is the main matter I want to direct your attention to. Then they separated; Mrs. Thumm continued in the possession of the property and so far as we know is there yet; but that is a matter Mr. Jope has nothing to do with in this transaction. He has brought his action of ejectment. If she has stayed there improperly, so far as he is concerned, he, upon that action can recover what' is called mesne profits. Now, then, the whole case depends upon whether or not Mrs. Thumm agreed to receive the amount she was entitled to receive; in other words, Did she, in agreeing to receive $1,355, which was refused her, agree to any more than she was entitled to? If she was entitled to that much money (it makes no difference how much more), she has a right to recover in this action and a right to recover in this action not simply the $1,355, because you find, if you sustain her theory, that she is entitled to at least that—but she is entitled to recover

whatever more the jury think on a fair settlement between her and Johnston she should have.]

You understand [she offered to take $1,355. Johnston refused to give it to her. If she was not entitled to receive that much, then your verdict ought to be for the defendant, and allow them to bring their suit at the proper time, because that would be a determination that she demanded more than she was entitled to; and that being the case she had no right to maintain this action; nor would she, in that view of the case, have a right to maintain this action, although she did leave the property, if Johnston, the defendant, had not received the money he was to get from Jope. The money seems to be ready for him whenever Jope can get possession of the property; but if you find that her offer of compromise was such as he was bound to accept, for the reason that he was not entitled to have a greater credit than she thus allowed him, that is to say the difference between $1,355 and the amount he received, then your verdict should be for her, and it should be for her for not only the $1,355, but more, provided you think the evidence shows that she was fairly entitled to more.]

[To repeat, if the plaintiff was entitled to have the $1,355 she is entitled to a verdict, and having determined that fact, then you take the testimony and from that say how much the plaintiff is entitled to recover. It would be necessarily more than $1,355.]

The jury returned a verdict for plaintiffs for $1,750.

The assignments of error specified the portions of the charge inclosed in brackets.

*George Shiras, Jr.,* and *C. C. Dickey,* for plaintiff in error.— In Grove v. Donaldson, 15 Pa. 135, the court said: "It is unquestionable that one party may show by parol that the other party has waived or prevented performance of a contract, either written or parol. A party who dispenses with or prevents performance of a contract cannot take advantage of the nonperformance by the other."

When covenants are mutual and dependent, one party cannot call upon the other to perform his part of the contract without having actually performed or tendered performance of his own. Cassell v. Cooke, 8 Serg. & R. 268, 11 Am. Dec. 610; Grace v.

Regal, 11 Serg. & R. 351; Withers v. Atkinson, 1 Watts, 236; Stokes v. Burrell, 3 Grant, Cas. 241; M. & M. National Bank v. Spratt, 15 Pittsb. L. J. 126.

*John S. Ferguson* for defendants in error.

OPINION BY MR. JUSTICE PAXSON:

The defendant below (plaintiff in error) has no just reason to complain of the verdict, even though a portion of the money embraced therein had not been received by him. The account which he rendered to plaintiff as her agent for the sale of the Thumm property showed the money to be in his hands; if, as was alleged, a portion of the purchase money had been withheld by Jope, it was evidently by collusion with defendant, to compel the plaintiff to submit to extortionate charges on settlement. The defendant had delivered a deed to Jope for the premises; the plaintiff was ready to deliver the possession, and the purchaser was ready to pay the money. The hitch in the matter was due to the defendant's greed, and to that alone. He used his position to attempt to extort money from the plaintiff, to which he was not entitled. In this the law will not help him.

The assignments of error all relate to the charge of the court. None of them is sustained.

Judgment affirmed.