## HARTMANN et al. v. SCHNUGG et al.

(Supreme Court, Appellate Division, First Department. May 18, 1906.)

**1. PRINCIPAL AND AGENT—LIABILITY OF AGENT TO ACCOUNT.** ·

The account of an executor showed that he had in his hands a speci-fied sum belonging to the estate. The beneficiaries under the will ap-pointed him attorney to invest such sum. He reported to the benefi-ciaries that he had invested the same in certain securities. He recog-nized the investments as outstanding, and paid to the beneficiaries sums of money as interest collected on the securities. *Held,* that he was chargeable with the securities, and on his failure to· deliver them, he was chargeable with the amount represented by them, notwithstanding the fact that the beneficiaries recognized a third person as acting as an at-torney in fact for him subsequent to the time of his report.

**2. TRIAL—REQUESTS FOR FINDINGS—TIME TO MAKE.**

Under Code Civ. Proc. § 1023, providing that before a cause is "finally submitted to the court * * * and before the decision * * * is rendered" the attorney for either party may submit a statement of facts which he deems proved by the evidence, etc., a party to be entitled to require the court to pass on a proposed statement of facts must present them to the court before the case is finally submitted for decision after the completion of the testimony and the argument.

Appeal from Special Term.

Action by George Victor Hartmann and another against Francis J. Schnugg, individually, and as executor of John Schnugg, deceased, and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGH-LIN, CLARKE, and HOUGHTON, JJ.

Joseph Rosenzweig, for appellants.
J. Brewster Roe, for respondents.

INGRAHAM, J. For many years John Schnugg the defendant's tes-tator had acted as attorney in fact for the plaintiffs' father and mother, in investing money for them, collecting the interest on the investments and looking after their property and had continued to occupy the same posi-tion for the plaintiffs after the death of their parents. He had invested certain moneys for plaintiffs' mother on bond and mortgage and after her death continued to represent the plaintiffs, and this action was to compel the representatives of his estate to account for these securities. The record is quite voluminous, but as we think the findings of the trial court were sustained by the evidence, it will not be necessary to consider the testimony.

The court found that the plaintiffs were the only children and sole heirs at law of one George Hartmann, who died on March 12, 1882, and Katharina Hartmann, his wife, who died on March 16, 1890; that Kath-arina Hartmann, on July 13, 1882, executed and delivered to John Schnugg a written power of attorney by which she appointed the said

John Schnugg to be her attorney in fact, empowering her said attorney, among other things, to invest and keep invested all her moneys at interest upon good bonds and mortgages or such other securities as her said attorney should deem most safe and profitable for said Katharina Hartmann; that John Schnugg accepted the appointment as such attorney in fact and acted thereon continuously until the death of said Katharina Hartmann on March 16, 1890; that at the time of the execution and delivery of said power of attorney the said John Schnugg had in his possession belonging to the said Katharina Hartmann a large sum of money which with bonds secured by mortgages in his possession amounted to $163,000 and upwards; that the said Katharina Hartmann died on March 16, 1890, leaving a will which was duly admitted to probate in the Surrogate's Court in the county of New York; that by said will the testatrix left all her property in the United States to the plaintiffs share and share alike and appointed John Schnugg her executor, to whom letters testamentary were issued; that on August 4, 1890, the plaintiffs executed and delivered to said John Schnugg a written power of attorney appointing the said John Schnugg as their attorney in fact, and empowering their said attorney, among other things, to invest and keep invested all their moneys at interest upon good bonds and mortgages, or such other securities as such said attorney should deem most safe and profitable for them; that upon the execution and delivery of said power of attorney the said John Schnugg accepted his appointment as said attorney, and thereupon and continuously until his death acted as said attorney in fact; that said John Schnugg, as attorney in fact of said Katharina Hartmann about August, 1887, accounted to said Katharina Hartmann, and by this account it appeared tht he had on hand at that time, as her attorney, a mortgage called the "Lawnside" mortgage, of $18,000, ad a mortgage on 2690 Third avenue for $9,000; and that on September 7, 1888, the said John Schnugg represented in writing to Katharina Hartmann that he had invested of her money in his hands the sum of $22,000 on a mortgage on real estate in the city of New York on Eighth avenue and 146th street; that on or about the 10th of October, 1891, said John Schnugg as executor of the will of Katharina Hartmann accounted as executor under her will, in which account it appeared that he held as such executor these three mortgages above mentioned, and also a bond and mortgage upon premises at 139 East Ninety-Fifth street, New York, for $4,500, and that he charged himself with interest received upon these several mortgages. This accounting was submitted to the plaintiffs who were then residing in Germany and where they continued to reside down to the commencement of this action. With this formal account there was sent to them an agreement approving the accounts and acknowledging that they had received from John Schnugg these securities, and that they had returned the securities to the said Schnugg to be held by him as attorney in fact for them and to administer the same in accordance with the power of attorney theretofore made to him, which instruments were duly executed by the plaintiffs and returned to the said John Schnugg who executed the same. These securities were not, as a matter of fact, sent by John Schnugg to the plaintiff, and were never in the possession of the plaintiffs. He merely reported to them

that he had these securities in his possession and retained them under the power of attorney referred to.

In relation to the bond and mortgage alleged in this account to be the bond and mortgage on the Eastchester Road property for $18,000, it appeared that this property was owned by Francis J. Schnugg, a son of John Schnugg; that he made a mortgage on this property on May 4, 1894, for $20,000 to one Jacob Wick; that this mortgage was subsequently discharged of record on March 28, 1896; that subsequently Francis J. Schnugg executed and delivered to other parties mortgages on the same premises for amounts exceeding in the aggregate $58,000, and that thereafter the said Francis J. Schnugg conveyed these premises by deed dated January 2, 1902, and duly recorded, to the Union Realty Company; that in relation to the mortgage for $9,000 on the property No. 2690 Third avenue, it appeared that this property was owned by Francis J. Schnugg; that on February 6, 1888, there was recorded in the office of the register a mortgage on said property to Katharina Hartmann for $9,000 which was discharged of record on June 28, 1889, by a satisfaction piece executed by the said John Schnugg, as attorney in fact for said Katharina Hartmann, and there was no other mortgage on record, or which appears to have been executed upon the said property in favor of either John Schnugg, as attorney in fact for the plaintiffs, or Katharina Hartmann, or the plaintiffs; that in respect to the mortgage of $22,000 on the property on the southwest corner of 146th street and Eighth avenue, New York, that property was also owned by Francis J. Schnugg, but no mortgage appears to have been executed or recorded upon the said property in favor of either the plaintiffs or their mother, but on November 23, 1892, Francis J. Schnugg conveyed this property to one Stein, subject to a mortgage of $28,000 to the Washington Life Insurance Company; that in respect to the mortgage for $4,500 the premises known as No. 139 East Ninety-Fifth street, no such mortgage was ever recorded, but it appeared that these premises were conveyed to Francis J. Schnugg by deed dated January 16, 1889; that said Schnugg, on December 9, 1889, mortgaged said premises to the Mutual Life Insurance Company for $10,000, and on January 10, 1890, the said Francis J. Schnugg conveyed the said premises to one Wilkening subject to the said mortgage for $10,000; that said Wilkening mortgaged said premises to said Francis J. Schnugg on January 10, 1890, for $4,500, which mortgage was discharged of record by said Schnugg on April 7, 1899; that subsequently said Wilkening reconveyed the premises to Francis J. Schnugg by deed dated January 10, 1897, and he subsequently conveyed the said premises to one Frank by deed dated October 7, 1901. Thus, these four mortgages in which John Schnugg had represented he had invested the plaintiffs' money actually did not exist, although John Schnugg constantly remitted to the plaintiffs the money which represented the interest on these mortgages down to the time of his death, and the plaintiffs had not, until June 1, 1902, any knowledge that these representations were false and that no mortgages existed, and the court found that the plaintiffs were each entitled to an undivided half of these sums claimed to have been represented by these mortgages, and judgment was awarded to each of the plaintiffs for one-half of that amount, with interest.

The trial court also found that from March 16, 1890, to August, 1902, the plaintiffs were the owners of certain premises in the county of New York, known as No. 1516 Avenue A; that said John Schnugg, as attorney in fact for said plaintiffs, under the power of attorney, executed by them, up to the time of his death on July 3, 1901, collected and had in his possession rents of said premises belonging to the plaintiffs, but no such rents collected after January 1, 1900, were ever paid to or delivered to the plaintiffs. The court then found that there was due to the plaintiff, George Victor Hartmann, from the executors of John Schnugg, deceased, the sum of $32,311.34, and that there was due to Rosalie Schacht by the executors of John Schnugg, deceased, the sum of $35,099.70, for which judgment was awarded. The court also found that after the death of said John Schnugg, Francis J. Schnugg received certain rents belonging to the plaintiffs of which there was a balance due of $18.96 to the plaintiff, George Victor Hartmann and the same amount in favor of Rosalie Schacht; and the court awarded judgment against the defendants, as executors of John Schnugg, deceased, for the costs of this action.

The basis of the liability of the estate of John Schnugg in his failure to invest the plaintiffs' property or the property of their mother, whose right had come to them, in the securities in which he reported to them that he had invested it. His accounts show that he had in his hands this $53,500 to invest. He reported to them that he had invested it in certain securities specified, and, based upon that report, his accounts were accepted and passed by the plaintiffs. He recognized the investments as outstanding until the time of his death, and paid to the plaintiffs sums of money as interest collected upon these mortgages. He certainly was liable to account to them for this sum of $58,500, and could only resist liability for the payment of that amount by delivering to them the mortgages in which the money had been invested. Under the settlement of his accounts as executor of Katharina Hartmann he admitted as attorney in fact for the plaintiffs the receipt of three of these mortgages from himself as executor. He was chargeable with those mortgages and in his failure to deliver them to the plaintiffs, he was chargeable with the amount represented by them. Assuming that the plaintiffs had recognized Francis J. Schnugg as acting as attorney in fact for John Schnugg and that they would be bound by Francis J. Schnugg's acts subsequent to that time, that would not relieve John Schnugg from his liability for a failure to make the investments in these mortgages that he reported that he had made, and which represented in his hands moneys belonging to the plaintiffs. As these findings of fact were sustained by the evidence, the legal conclusion follows that John Schnugg, or his estate, is liable to the plaintiffs for the amount represented by these alleged mortgages.

The only real question presented, I think, is that raised by the refusal of the trial court to pass upon certain proposed findings submitted by the defendants. Section 1023 of the Code of Civil Procedure limits the time within which a party may present to the court or referee a statement of the facts which he deems established by the evidence and of rulings upon questions of law which he desires the court or referee to

make. To entitle a party to require the court to pass upon his proposed statement of facts or conclusions of law, he is required to present them to the court before the case is finally submitted for decision. It is not alleged that this time was extended by consent. The final submission of the case to the court for decision is the submission after the trial when the testimony is finished and the arguments concluded. A party cannot wait until after the case is finally submitted, and the court has announced its decision, and then submit proposed findings and require the court to pass upon them. Counsel for the appellants is correct in saying that the announcement of the decision is not the decision of the case; that the case is not decided until the decision is signed and filed; but the time within which counsel are allowed to submit proposed findings is "before the case is finally submitted to the court or referee"; not before the case is finally decided by the court or referee.

I think, therefore, that there was no error in the court's refusing to pass upon these proposed findings; but the utmost that the defendants could claim is that their proposed findings presented facts which the court was bound to find, or that it would be error for the court to refuse any of these proposed findings. But a careful consideration of them, has satisfied me that none of these proposed findings, except so far as they have been found, were at all material or related to the plaintiffs' right to recover.

Upon the whole case, I think the judgment was right, and should be affirmed, with costs. All concur.