In the Matter of the Estate of ADALINE A. WINNIE, Deceased.

Surrogate's Court, Albany County, July 12, 1934.

*Edgar S. Knox,* for Rensselaer Street Mission Sabbath School.

*Woollard & Morris,* for Emma A. Parker.

*Louis F. O' Neill,* for the petitioner.

ROGAN, S. The life tenant and remainderman of the trust created under the will of Adaline A. Winnie, deceased, have filed objections to the accounts of the deceased substituted trustee, and ask that his accounts be surcharged with the amount of the rent uncollected at the time of his death, and with the unpaid taxes and the cost of repairs to the property which it is alleged he failed to care for. The corpus of the trust consists of premises No. 75 South Lake avenue, Albany, N. Y. It appears that Richard B. Wagoner as substituted trustee was in possession of the premises from October 1, 1930, to the day of his death, February 3, 1934. At the time he took over the trust and commenced to collect the rents of the premises in question they were occupied by one Edward J. McCormack, who continued as tenant until after the death of the trustee. Soon after the death of Mr. Wagoner a substituted trustee was appointed who dispossessed the McCormacks and the premises have remained vacant until the present time. It is undisputed that during the entire period the tenant was in possession under a lease requiring the payment of $95 each and every month. The account filed by the executrix of the trustee shows that during the period from July 1, 1932, to February 1,

1934, the sum of $540 in rent was collected. The life tenant contends that the deceased trustee was negligent in failing to collect the sum of $1,900 and seeks a surcharge of $1,360.

It is the duty of a trustee in the execution of his trust to act with prudence and diligence, as well as honesty; and even though he is left to his own discretion in the management and care of the trust estate, that discretion does not exclude the necessity of care and diligence. It is a question of fact as to whether his administration of the property was careless or not. If in the conduct of the affairs of the trust he makes a mistake of judgment, such as any prudent man might make, he should not be charged upon the ground of alleged remissness. However, if it is shown that he did not do what he ought to have done in the exercise of proper care and diligence and loss has occurred due to his improvident or negligent management, there is a wrong and a loss, and, therefore, a devastavit. Where there has been a failure to sell personal property by an executor without adequate excuse, it is quite common to charge him with the resultant loss, and I can see no reason why in a proper case the same remedy might not be applied in the case of a trustee who is careless or negligent in the management of real estate.

The only evidence relating to the non-collection of the rents by the trustee came from Miss Case, the executrix of the deceased trustee and secretary in his office during the duration of the trust. She testified in part as follows: " Q. Between July 1st, 1932, and the date of Mr. Wagoner's death, will you state briefly what efforts you made to collect the rent? A. Well I called them several times on the phone, and even went there. Q. Anything else? A. Nothing other than that. Q. Was any resort had to legal proceedings? A. No. Q. When you called them on the phone what did you say? A. We asked them for the rent. Q. Is that all? A. Yes." It appears, therefore, that during all of the period when the rent was not being received no attempt was made by the trustee at all to regain possession of the premises so that he might rent them to somebody who was responsible and who could pay. It appears further that when Miss Parker went to see Mr. Wagoner in February, 1933, for the purpose of asking him if he would not put Mrs. McCormack out for the " coming year," he answered no, without giving any reason. He allowed the matter to go along without making any effort to secure a paying tenant.

I do not feel that the petitioner has offered sufficient proof to bring the case within the rule laid down in *Matter of McIntyre* (24 App. Div. 167), wherein it was shown that a considerable portion of the property in the neighborhood was vacant, and the

court felt constrained to hold from the evidence that if the tenant had been dispossessed the property would have remained vacant and the trustee would then have been compelled to incur the expense of caring for it. Even at the present time, with the house empty, petitioner's own witness Joseph A. Burkhart testified that $300 would put the house in first class tenantable condition. It seems to me that the trustee under the circumstances should have known that it was to the disadvantage of the estate to suffer a tenant to remain for · such a long period without paying rent, particularly when no good reason is given for such conduct. His accounts should, therefore, be surcharged with such loss, viz., $1,360.

The objections of the Rensselaer Street Mission Sabbath School to the accounts are dismissed.

Enter decree accordingly.