40 N.J. Super. 344 (1956)
122 A.2d 897
SOCIETA OPERAIA DI MUTUO SOCCORSO VILLALBA, A CORPORATION FOR NON-PECUNIARY PROFIT, PLAINTIFF,
v.
ALBERT DI MARIA, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 29, 1956.
*346 Mr. Frank S. Stabile and Mr. Seymour D. Kaplan, attorneys for plaintiff.
Mr. Edward J. Leadem, attorney for defendant.
CONFORD, J.A.D. (temporarily assigned).
The essential facts in this matter may be briefly stated. Plaintiff was a non-profit fraternal organization and defendant its treasurer during the period of time here in question. Plaintiff was owner of certain real property situate at Phillips Street, Trenton. Operating a tavern in the premises as a tenant at a monthly rental of $400 was one Joseph Lupo. Lupo was, coincidentally, both president of the plaintiff and a relative by marriage of the defendant. It was defendant's duty to collect the rent from Lupo and to deposit it in bank and account for it to the plaintiff. He became faithless to that trust in January, 1954. At Lupo's request, purportedly *347 for lack of supporting funds, he withheld depositing Lupo's check for the December, 1953, rent. He did the same in February, 1954, as to the January rent. There is uncertainty from the proofs whether he received rental checks for the months, February to May, 1954, inclusive. It is established, however, that at each monthly meeting of the plaintiff's membership from January to May, 1954, inclusive, he reported receipt of the tavern rental for the prior month and that his ledger accounts reflected receipt of the rents for each of the months, December, 1953, through May, 1954, inclusive, notwithstanding that no funds were actually collected from Lupo as rent for that period. It is inescapable from the evidence that defendant's conduct was designed to conceal Lupo's default in rent from the plaintiff and to permit him to remain in occupancy of the premises nonetheless. There is also proof that Lupo became insolvent at some undetermined point of time and that he is presently and has for some time past been liable on judgments exceeding $5,000 in amount.
In June, 1954, defendant made a clean breast of the situation to the board of governors of the plaintiff. There is no evidence of any official action by plaintiff thereon prior to its institution of this action in October, 1955, praying for an accounting by defendant of the missing funds and that he be ordered to pay the same to plaintiff. It is represented to the court on behalf of plaintiff that it brought no action against Lupo because of his financial irresponsibility.
Defendant's defenses of laches, condonation and ratification may be dealt with summarily. Defendant has in nowise been prejudiced by the lapse of time, and the application of laches does not appear equitably indicated in the particular circumstances. There is no factual substantiation in the proofs for the other defenses mentioned.
It is seriously argued on defendant's behalf, however, that, conceding a breach of trust, there has been established no damage, as plaintiff never brought an action for rent against Lupo and therefore assertedly cannot say with certainty that such an action would not or may not result in realization *348 of the funds due. Either of two approaches to the legal questions presented leads to refutation of the argument advanced, one from the standpoint of principles of trusts, the other on the basis of estoppel and agency.
As agent of the plaintiff, defendant was its fiduciary and owed it the duty of good faith and loyalty. Ready v. National State Bank of Newark, 117 N.J.L. 554, 559 (E. & A. 1937); 2 Am. Jur., Agency, § 251, p. 202. "One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust. He must exclude all selfish interest and also all consideration of the welfare of third persons." 3 Bogert, Law of Trusts (1946), § 543, pp. 375, 376. A trustee can be disloyal to his cestui just as significantly by seeking the advantage of a third person as by looking to his own private aggrandizement. Ib., p. 397. "Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the `disintegrating erosion' of particular exceptions." Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1 (Ct. App. 1928), per Cardozo, C.J. A primary incident of the obligation of the agent or trustee is the duty of prompt, full and frank disclosure and account. Liberty Title & Trust Co. v. Plews, 6 N.J. 28, 40 (1950).
Defendant relies upon the language in Proprietors of Eastern Division of New Jersey v. Force's Executors, 72 N.J. Eq. 56, 127 (Ch. 1896), to the effect that the measure of damages recoverable by a cestui que trust against his trustee for a breach of trust is, at his option, (1) the amount the cestui has actually lost by the breach, or, (2) the amount which the trustee has gained thereby. But the emphasis in the reference, "actually lost," is not to a standard of certainty of proof in such cases, but, rather, to the choice between the amount of the cestui's loss and that of the trustee's gain. In the instant case there is a loss prima facie attributable to the acquiescence by defendant in the default of payment by Lupo and his fraudulent concealment thereof *349 in his accounting to plaintiff. We are not required to indulge the assumption that proceedings promptly instituted upon inception of the default to recover possession of the premises or the rent would have been fruitless. In re Smith's Estate, 123 Misc. 69, 204 N.Y.S. 475, 477 (Sur. Ct. 1924). Cf. In re Winnie's Estate, 152 Misc. 291, 293, 273 N.Y.S. 806 (Sur. Ct. 1934). Where a trustee's delay in enforcement of an obligation due the estate has caused it to become uncollectible, he will be surcharged therefor. 2 Scott on Trusts (1939), § 177, pp. 937, 938; Backes v. Crane, 87 N.J. Eq. 229 (Ch. 1917).
A trustee so far delinquent to his trust as to have deliberately falsified an account in order to benefit a third person to the disadvantage of his cestui will not be heard to assert rules of certainty in the establishment of causal relation between breach of obligation or duty and loss, applicable in other fields of liability, in a case where a loss unquestionably exists and is the apparent consequence of the infidelity of the trustee. Cf. Blauvelt v. Ackerman, 23 N.J. Eq. 495, 502 (Ch. 1873). Whenever an accounting by a trustee is false or deficient, all presumptions are against the trustee, and obscurities and doubts will be resolved adversely to him, not in his favor; Ib., Purdy v. Johnson, 174 Cal. 521, 163 P. 893 (Sup. Ct. 1917). No reason is perceived for not applying these principles in the present case to require defendant to show that the loss did not flow from his malefaction rather than require plaintiff to establish with certainty that the unpaid rents could not have been recovered from the apparently insolvent tenant.
The approach on the estoppel basis is equally conclusive against defendant. It is stated as a general rule that an agent is estopped to deny the amount shown to be due by his account, 3 C.J.S., Agency, § 173, p. 62; moreover, that if he represents to his principal that he received certain funds or property he cannot later show he received nothing at all or something else instead, ib. These principles seem soundly applicable here as a matter of estoppel, independent of agency. There was here a false representation by defendant *350 to plaintiff of material facts made with the intention that plaintiff should be led to refrain from forthwith pursuing its legal remedies for recovery of possession of the premises or the rents due from Lupo. Plaintiff relied upon defendant's false account to its detriment. Defendant's intent was achieved. Every element of an estoppel in pais is present. New Jersey Suburban Water Co. v. Town of Harrison, 122 N.J.L. 189, 194 (E. & A. 1939); Mattia v. Northern Ins. Co. of New York, 35 N.J. Super. 503, 510 (App. Div. 1955). Wood v. Blaney, 107 Cal. 291, 40 P. 428 (Sup. Ct. 1895), is an agency case directly in point; and see Hartmann v. Schnugg, 113 App. Div. 254, 99 N.Y.S. 33, 36 (Sup. Ct. 1906), affirmed 188 N.Y. 617, 81 N.E. 1165 (Ct. App. 1907); J.S. Phelps & Co. v. Plum, 32 S.W. 753, 754, 17 Ky. Law Rep. 817 (Ct. App. 1895); Johnston v. Thumm, 7 A. 739, 740, 4 Sadler 433 (Sup. Ct. 1887). Defendant should be held to the satisfaction of the account he deliberately rendered.
Judgment will be entered in favor of plaintiff and against defendant for $2,400, together with interest on each installment of rent from the date of the entry of receipt thereof in the ledger book.